Good morning. Still, Ms. Beck. Good morning, Your Honor. May it please the Court, Counsel, You're nothing but a cum dumpster. Nice cans. You look good with a rod between your legs. This is just a sampling of the evidence the District Court ignored when it ruled on defendant's motion for summary judgment. This Court should overturn the District Court's holding because it made impermissible credibility determinations and inferences contrary to the non-moving party and violation of Federal Rule of Civil Procedure 56. The District Court cherry-picked evidence and accepted all of the defendant's evidence, even in those situations where plaintiff offered evidence that was contradictory. As the Supreme Court noted in Anderson v. Liberty Lobby, credibility determinations should be reserved for the fact-finder. Summary judgment is only appropriate in those rare instances where there's no genuine issue of material fact. Inferences are meant to be drawn in the light most favorable to the non-moving party. Some examples of the improper factual inferences made by the District Court were Amanda's male co-workers did not report the same supervisor. Our client offered evidence in her deposition that was in the record that everyone on the production floor reported to Gary Stillman, the foreman. The District Court assumed that Amanda did not report her harassment and discrimination to management. But the record shows over 20 instances of harassing and discriminatory conduct where Amanda did report to Gary Stillman. The foreman is not a decision-maker, though, is he? Your Honor, the foreman was involved in the decision to terminate Amanda. He provided input into that decision. But that's not necessary. I think what you're alluding to is the Vance v. Ball State analysis, and that's appropriate when the Court's considering the Ellerth-Berger analysis, when there's no tangible employment action. There was a tangible employment action here, so Vance is improper. More importantly, Mr. Stillman was an individual that was an appropriate person to report harassment to. This was admitted by Mr. Stillman as well as Mr. Keller. And in Sims, this Court recognized that when an organization denotes an individual to receive harassment complaints, the notice is then imputed to the organization. So defendants had notice of Amanda's complaints given the situation. However, the District Court ignored this fact and focused instead on that Vance analysis, which was improper. Did any of the comparators have a similar history of disciplinary actions against them? Your Honor, that was one of the things that makes the comparators show even more discrimination. There isn't an exact history of improper behavior by the comparators, as was the case in Lynn v. Deekness. When we look at that case, another comparator analysis decided by this Court. In that case, the plaintiff and then the comparator more had different histories of being in trouble, different performance issues, different disciplinary issues. But the Court recognized that they didn't have to be exactly the same. And one of the factors toward the discrimination was the improper application of that discrimination policy and the improper application of the disciplinary procedures. Here, part of the reason Amanda's disciplinary history was different than some of her male comparators was because the defendant was improperly applying the policy. They were discriminatorily applying it solely to our client, the female individual. The record shows that one of the instances of Amanda's discipline was a comment where she stated that her underwear was riding up her butt. When she was being disciplined for this, her foreman, Courtney, stated that he understood it was unfair. He just had to say something because someone mentioned it. Meanwhile, in March 2015, less than a month before Amanda was fired, she then complained to Stillman about male employees making similar complaints, saying things like they had icicles on their balls, or referencing having pools about wanting to sleep with her. She made similar complaints about these male co-workers. When we look at the comparator analysis, it doesn't have to be a perfect clone, as the Supreme Court recognized in Rideout. We can look at the fact that a jury could decide that they wanted to disregard the comparator and decide that the factors maybe weren't present to recognize the individual as a comparator. It's more so analysis of whether, given the facts, if a jury could find that the individuals were a comparator, as the court recognized in Lynn v. Deekness. This is a similar situation when we look at the court in Byrne v. Arkansas, Secretary of State, another Eighth Circuit decision, which involved a black and white officer. In that situation, the lower court had said this white officer's prior disciplinary history, where they had completed one memorandum regarding being tardy. They said that it was incomparable, the district court did. But this court then recognized that improper and uneven distribution of the discipline and different expectations for the officers went toward the comparator analysis, recognizing that they could still be comparators because of the improper application, the disequal treatment with that application and burden. Is one of her complaints that, am I understanding correctly, that her concern is that she was disciplined for actions that male co-workers were not? Yes, Your Honor. And the discipline, was there also a suspension and this was something, maybe a loss of pay or something? Yes, Your Honor. Would that have been an actionable claim that where the statute might be running on those particular complaints? It seems like a legitimate complaint if she's got something to back it up, but it seems to me that maybe the time has passed for that. No, Your Honor. This was an accumulation throughout her employment. And at the time, her final complaint, the one that she was terminated for, the time hasn't run. The situation where she submitted the complaint to Supervisor Foreman Stillman and Courtney, where she referenced being treated differently because she was a woman and referencing the Frost incident, that was still present. This was an ongoing violation throughout her employment. And so is it her claim that they were improperly applying their policy? Because it almost seems, and I'm trying to just kind of work through this, because it's applying as it applied their policy to other people and how that kind of conjoins in with her claim of a policy violation. Your Honor, the improper or unequal application of the policy goes toward the gender discrimination component of her complaint. It is evidence of gender discrimination throughout her employment. It also ties into that sexual harassment component. That was one of the situations where Amanda found it most offensive was that these male individuals were being allowed to make commentary on her body, even attempting to grope her, and there was no response. That went toward it being subjectively as well as objectively severe and pervasive to her and unwelcome. The tangible employment action where the statute of limitations would run would be that termination date, where there was that adverse action taken against her. Specifically with regard to the comparators, Amanda provided multiple situations in the record, both to the district court and that we've provided in this appeal, where instances were reported to her supervisor, Mr. Stillman, and there was no action taken to correct or provide some type of remedial action. This goes toward defendants' failure to follow their policies. Defendants argue that there was no notice to defendant, and the district court adopted this. However, this ignored the facts in the record that Amanda did report complaints to the supervisor, Foreman, to Courtney. She reported to Mr. Courtney that an individual attempted to grope her and her written complaint. Again, these are those factual discrepancies and inferences the district court made that were improper under the summary judgment rules. We can also look to whether Amanda engaged in protected activity. The district court focused on the fact that Amanda didn't complain to HR or the plant manager to find that she didn't engage in protected activity. This is simply not the standard or requirement that she was supposed to do. Under defendants' own policy, Amanda was able to report instances of sexual harassment and discrimination to Mr. Stillman and Mr. Courtney, which she did. She engaged in protected activity. Less than a week before she was fired, she reported to a foreman, Danny Baxter, Foreman Courtney, Foreman Stillman, and HR, that she observed what she believed to be a racially discriminatory incident. Under this court and our sister circuit's precedent, that what she considered race discrimination did not need to be legally cognizable. It needed to be based on her reasonable leave. However, the district court applied a heightened standard, requiring Amanda to only be able to complain about race discrimination that was legally cognizable, applying an impermissible and insurmountable hurdle. Lastly, the letter that the district court and defendants relied on as defendants' nondiscriminatory reason was, in fact, a complaint of discrimination in and of itself. How do you look at there's the letter and there's the drawing? Those seem to me to be different communications. First, the letter was provided with the drawing, and the drawing, when Amanda was in her meeting with Human Resources Hockemeyer, she stated that those words in the drawing were also made by defendants' own employees, tying it all in to that complaint as well, and that was before she was fired. I'd ask that I reserve the remaining amount of time for rebuttal, Your Honor. Before that, if I might just, if you look at the epithets contained in the drawing, wouldn't any reasonable inference of those epithets be, in fact, that the figure who appears to be Ms. Gibson is, in fact, being subjected to those slurs? Isn't the inference, when viewed in a light most favorable to the claimant, is it really possible that you could say that those are, in fact, slurs that somehow you're advancing towards your managers? I mean, is that a reasonable inference in your view? No, Your Honor, and that's why we appealed the district court's decision. Thank you. Your Honors, Counsel, may it please the court. My name is Scott Moore, and I represent the Applee Concrete Equipment Company, or Conoco. Amanda Gibson repeatedly engaged in conduct in the workplace that was inappropriate, using vulgar language, sexually suggestive language, which she received verbal warnings for, written warnings for, and ultimately a suspension. Didn't your supervisors at the time of employment say this was an environment that was crude and vulgar, and that there were all sorts of sort of conversational problems on this workforce floor? And while she may have engaged in some of that herself, I mean, wasn't she singled out and treated differently? No, Your Honor. The allegations of what was said all come from the plaintiff herself. They weren't corroborated. But more importantly, she was very aware of the fact that, and it was very clear in the policy, that she read, acknowledged, understood, and admitted in her deposition she understood what harassment was, as well as to whom to report it, and that she had an obligation to report it. Despite that, she never reported it, even after being disciplined, both verbally, then in writing, in two evaluations, and then suspended for clear violations of that, comparing women to motorcycles in a sexually suggestive manner. She was very aware of what was prohibited. And this came over a year period of time. Yet she nonetheless brought in that picture that we talked about that was littered with offensive terms by any measure. Now understand, and I think it's very important for this court to understand two things. Number one, despite plaintiff's attempt to continually refer to Stillman and Courtney as supervisors, they are not. It is very clear under this court's decision in, excuse me, Jones v. John Morell Company, that foremen, analogous to this case, who do not have the ability to hire, fire, promote, or reassign to significant duties, are not supervisors. It seemed like the record suggested, at a minimum, that that was the person that she was supposed to complain to, that you were supposed to take your complaints to Stillman or Courtney. Absolutely not, Your Honor. The record shows that, and Mrs. Gibson admitted that she signed and acknowledged the harassment policy, which gives three different avenues, the manager of the plant, human resources, and then also Oshkosh corporate headquarters. She admitted in her deposition she was fully aware of those multiple avenues and how she needed to report it, and she didn't. Just as a practical matter, it seems if I were having trouble on the floor, the first place I would go to is to my supervisor. Well, they're not supervisors, and I would agree with you on that, that you would go to your supervisor. Or foreman. How about my foreman? And that's why Jones is such an important case here, because Jones addressed this type of foreman issue directly, and this court would have to overturn that case to find that Courtney and Stillman were supervisors. Well, would we really have to? Because weren't Courtney and Stillman consulted with, and did they not participate in the actual termination? What they did is they brought the picture to management, and they claimed the picture was the complaint, but as Mrs. Gibson admitted and her actions showed, she brought it to Stillman and Courtney and said, do not share it with anyone else. They believed they had a duty to share it with management, brought it to management. When Mrs. Gibson realized where it was, she snuck in to Mr. Stillman's office, took the complaint, and ran away with it. But fortunately, a copy had been made of it. So, no, she was very aware to whom she needed to complain. In fact, in her own written admissions contemporaries, at the time after her termination, when she finally complained after her termination, she indicated in there that she considered her coworkers a bunch of uncles and brothers, and with regard to Stillman, she referred to Stillman as somebody she really respected and respected his judgment. Now, this is after her termination, after her termination. What is more, she said that I found very few things offensive, and when I did, I said something to the offender and it stopped. I did not want to report them because she thought they might get terminated. We are putting a yoke on Concrete Equipment Company that is certainly adverse to the Ellerth-Farragher defense here. This is a textbook example of Ellerth-Farragher. The whole purpose of that defense is so the employer can learn of the harassment and stop it before it gets severe and pervasive. Not only did she not report, even though she was well aware of exactly how she needed to report and she had a duty to report. Are foremen required to report incidents of harassment that they become aware of? Any employee is required to report harassment, and indeed, there are examples where Stillman and Courtney did report the harassment. Despite the fact that Ms. Gibson says there are no comparators here, there were no less than four men who were punished under the sexual harassment policy. Mr. Lode, who was fired for making inappropriate comments towards a male co-worker and grabbing the co-worker's head and pulling it towards his crotch. Mr. Horn, who made inappropriate sexual comments on Facebook regarding a female employee, was also terminated. Mr. Little and Mr. Craft were both suspended because a foreman saw that they were looking at porn on a phone and didn't report that. They were both suspended at that point. So there is a consistent record of enforcing the policy once it's known, once the foremen are known. And I think it's very important for the record to understand that all of the allegations that Ms. Gibson arises with regard to Mr. Stillman and Mr. Courtney, they were all denied. They denied that she reported that to them, and there's no other evidence that she reported anyplace else, other than referring to a sander as an ass grinder. That, they admit, that was a tool, was called that. It was eventually, they stopped doing that. But Ms. Gibson said, that didn't offend me. She admitted that in her deposition, and that didn't offend her. So it's very important to understand that the policy worked as it should, in this case, both for male and female employees. And this, again, even were we to say that it rose to the level of severe and pervasive, certainly Mr. Stillman and Mr. Courtney are not supervisors for that analysis. They talk about a tangible employment action. Mr. Stillman and Mr. Courtney did not take a tangible employment action against Ms. Gibson. It was Art Keller, who was the plant manager, who terminated her. She is not alleging that Art Keller, nor Carrie Hockenmayer, who was the HR manager, engaged in any harassment. If they engaged in harassment, then it would be a tangible employment action. They did not. They're not accused of that. So we go to the Ellerth Farragher defense at that point, and we walk through the steps. And it's very clear that the employer did everything it could to give Ms. Gibson the opportunity, if she witnessed harassment, to follow the reporting requirements. And the evidence shows when it was reported, then steps were taken. It's also important that we look at the district court's decision with regard to severe and pervasive. There's both an objective and a subjective standard of severe and pervasive. And we know because Ms. Gibson admitted she engaged in all of the conduct for what she was disciplined for. She admitted that. Yes, she admitted that. But don't you have to put that into context? Let's start with the objective. Sure. Would you agree that there's sufficient evidence on the objective factor? If all of the plaintiff's unsubstantiated allegations were believed, yes. And so how many women are working at this plant? I don't know the answer to that, Your Honor. Because I understand she's saying she was not offended by a lot of it. But I also understood her testimony to be in part, I want this job. I feel good about having a job here. I'm getting a trade. I've got something. I'm a welder. I can do something and support myself and my family. She's trying to fit in as best she can. At the beginning of her interview process, the plant manager said this is a vulgar place. And how are you going to survive in a vulgar place if you don't try to step up a little bit? And so I'm interested in the subjective part because I don't know that, and as I read the record, it says cut and dry, that she was all on board with what was going on there. Sure. I will say two things to that. Yes, she wasn't a welder, but the plant manager made sure that she got into the welding program to become a welder, very supportive of her employment throughout. But Ms. Gibson was warned over and over again that she couldn't engage in that behavior. The actual record where we have evidence shows that she engaged that behavior after warning, after warning, after warning, and she perpetrated those things. So that goes necessarily to the subjective nature. But also what goes to the subjective nature is her conduct. Even after her termination, she was making very clear that I wasn't offended such that I wanted to report any of these people. I didn't want them to get into trouble. She was well aware that Concrete Equipment Company enforced their policy. In her own conduct, she was aware of it.  She knew how it worked and it could work, but she chose not to do that. And she engaged in the conduct. She was constantly using part of her parlance was that kind of words and behavior. She admitted to that over and over again. She admitted to that. She knew what was prohibited, yet she still engaged in that conduct. And again, we think looking at, for example, the case, Onda versus Wicks Furniture Company, 517, Fed 3rd, 526. A decision authored by you, Judge Grunder, where you found the plaintiff was unable to establish that she was subjected to a severe pervasive harassment. When the plaintiff wrote, and I quote, she had the privilege to work with some very hardworking and dedicated employees, including an express reference to the store manager she claimed engaged in that harassment. That's what we have here. Gary Stillman, who she claims didn't do anything with her complaint and was involved in the harassment. In her alleged complaint, she said, Gary, I respect you and you always seem fair and you like to look at both sides. That is more evidence showing that she was not subjectively offended. But again, even were she subjectively offended? We go back to the textbook application of Ellerith Verager here. She was aware, she admitted, that the company did everything it could to set forth its policy and convey it to her. And she admitted she understood the policy, how to report, when to report, what she needed to report. And she admitted she did not do that. That is, what more can the company do at that point? When they don't have knowledge of it, and it's set forth, and again, she doesn't take advantage of it. And again, really, in the end, it ended up, any time she objected to it, she said, it stopped. It didn't go on after that. And perhaps that's maybe why she didn't report it. Don't know, but we do know that she has that obligation. Mr. Moore, you heard Judge Erickson's question regarding the characterization of the drawing and the letter. How do you respond to that question? I'd say in two ways, Your Honors. Number one is that when that complaint was brought in, alleged complaint, it wasn't brought in as a complaint. She just wanted to share that with Staleman and Courtney and said, don't share it with anyone else. And when she found it might be shared with management, she ran in and took it and ran away. So it can't reasonably be a complaint in the first place. Number two is she was warned about using this type of language over and over again in a progressive discipline. This wasn't the first time. This was the final straw after she had been warned. And Staleman and Courtney both reported they were frightened by this. This came in and this had the N word in it, the C word in it. All these words in there that they were frightened by this picture and it didn't make any sense to them at all. And it's certainly not words that should be shared in the workplace by someone who has admitted they know the proper channels to make an actual complaint. This just simply and that complaint, again, was for race discrimination with regard to her boyfriend or who she called her lover at the time, who was at the soda machine and told another person they can go. I'm not going to repeat the language, but use profane language in it. And there was there was no no even real adverse action there. So it's very important the context that you look at that complaint. It was for race discrimination. And again, the people, her co-workers who received that complaint were scared. They didn't know what to do when they see all that, which is a clear violation of the policy. And when it was reported to management, it was addressed. And we can't look at it in a vacuum. It was after substantial progressive discipline. Finally, again, with regard to the comparators, I do want to mention that the district court didn't find that they did not report to the same supervisors. What the district court found was it wasn't reported to the managers and H.R. who made the decision. If those other things she alleges would have been reported to those individuals, they would have been proper comparators. But moreover, there's no evidence of the egregiousness, the progressive discipline, all the things that Miss Gibson was subjected to. There's no evidence that those folks are comparators at all. For those reasons, Your Honors, Conoco respectfully requests that the court affirm the district court's order granting summary judgment. Thank you. Thank you, Mr. Moore. Thank you, Your Honor.  Specifically, stacks in the cat's paw doctrine applies in this situation more likely because Mr. Stillman and Mr. Courtney were closely involved with the termination decision. Counsel for the defendants states that Stillman and Courtney were frightened by the words in Amanda's complaint. And that's because the words used in Amanda's complaint were derogatory. They were curse words. They were harsh. But they were also words that Amanda told Human Resources that she experienced in her employment with defendant. In her complaint, she stated, this is what it's like being one of only a few women at the plant. She talked about Frost and said, this is what it's like being one of only a few African-American men at the plant. There's no question, as Judge Erickson seems to indicate as well, that this was a complaint of discrimination. And even if there is a question, that's a question best meant for a jury to decide. Defendants seem to want to have corroboration or substantiation for Amanda's facts that she stated in her deposition that are in this record in order for her to survive summary judgment. But that's not what the standard requires. As noted in Tolan versus Cotton, a 2014 Supreme Court opinion, when there are those non-moving parties facts that are in contradiction with what the moving party is asking for, you need to adopt the moving parties in Tolan. There were disagreements about whether the deck was lit, whether the assailant was in a crouching versus charging position, whether the individual was yelling. The court relied on the individual testimony, even if it wasn't corroborated or substantiated because the individual wasn't the moving party. With regard to the subjective belief of sexual harassment, the record shows that there were instances where Amanda felt intimidated, where she felt degraded by defendants' employees' actions. And those are situations that clear dispute of fact, but that's a situation a jury should decide. A jury should get to hear the evidence in this case and determine whether or not they want to give credits to her testimony. That was not a role for the district court's judge to play the role of the fact finder. I believe, Judge Gruner, you asked how many women were on the floor. Amanda was potentially one of only, I think she might have been the only one on the production floor for a significant time period of her 16 months as an employee. Also, merely because Amanda may have engaged in some of the behavior, that doesn't mean that she couldn't have possibly subjectively found that some of the sexual harassment was unwelcome. As this court noted in Beard, simply because a female employee had, I believe, engaged in touching a thigh, that didn't mean that she was then welcoming being touched later on, and allowed the plaintiff's case to then go to a jury to decide. The district court summary judgment ruling was overturned in that situation. For these reasons, this court should overturn the district court's ruling. Thank you. Very well. Counsel, thank you for your appearance and arguments today. Case will be submitted and decided in due course. Thank you.